UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JERMAINE L. WALKER,

        Petitioner,

v.                                Case No. 3:16-cv-1428-J-34JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## ORDER

### I. Status

Petitioner Jermaine Walker, an inmate of the Florida penal system, initiated this action on July 18, 2016,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1) in the Northern District of Florida. On November 10, 2016, the Northern District of Florida transferred the Petition to this Court. Doc. 4. In the Petition, Walker challenges a 2013 state court (Suwannee County, Florida) judgment of conviction for sale of cocaine within 1,000 feet of a publicly owned recreational facility and possession of cocaine with intent to sell. Walker raises three grounds for relief. See Petition at 10-32.[2] Respondents have submitted a memorandum in opposition to the Petition. See Answer (Response; Doc. 22) with exhibits (Resp. Ex.). Walker submitted a brief in reply. See Petitioner's Reply to Respondent's Answer Petition (Reply; Doc. 27). This case is ripe for review.

_____

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

## II. Relevant Procedural History

On November 17, 2008, the State of Florida (State) charged Walker by way of Information with sale of cocaine within 1,000 feet of a publicly owned recreational facility (count one), possession of a controlled substance with intent to sell (count two), possession of cocaine (count three), leaving the scene of an accident (count four), resisting an officer without violence (count five), and driving while license suspended or revoked, second offense (count six). Resp. Ex. A at 3-4. On March 5, 2009, Walker, with the assistance of counsel, moved to sever counts one and two from the remaining counts. Id. at 23-24. The circuit court granted the motion to sever the same day. Id. at 25. Walker proceeded to a jury trial on counts one and two, at the conclusion of which the jury found him guilty as charged as to both counts. Resp. Ex. B at 93. On May 7, 2009, the circuit court adjudicated Walker to be a habitual felony offender (HFO) and sentenced Walker to a term of incarceration of twenty-five years in prison, followed by a term of probation of five years as to count one and a term of probation of five years as to count two. Id. at 180-87. As to the remaining counts, Walker pled guilty and the circuit court sentenced Walker to a term of incarceration of three years in prison as to count three and time served as to counts four, five, and six. Id. at 188-203. The circuit court ordered the sentences for all counts to run concurrent with each other. Id.

On direct appeal, Walker's appellate counsel filed an Anders[3] brief. Resp. Ex. J. Walker filed a pro se initial brief in which he raised the following arguments: (1) the circuit court failed to instruct the jury regarding the element of Walker's knowledge of the presence of cocaine; (2) the cumulative effect of the prosecutor's improper comments

---

[3] Anders v. State of California, 386 U.S. 738 (1967).

constituted fundamental error; (3) the prosecutor improperly commented on Walker's failure to call witnesses in support of his alibi defense; (4) the prosecutor improperly misstated evidence and commented on facts not in evidence; and (5) the prosecutor improperly bolstered the testimony of law enforcement officers and the confidential informant. Resp. Ex. K. The State did not file an answer brief. On November 4, 2010, Florida's First District Court of Appeal (First DCA) per curiam affirmed the convictions and sentences without a written opinion. Resp. Ex. L at 1. Walker filed a pro se motion for rehearing, which the First DCA denied on January 6, 2011. Id. at 2-9. The First DCA issued the Mandate on January 24, 2011. Id. at 11.

On August 29, 2011, Walker filed a pro se petition for writ of habeas corpus, in which he argued that section 893.13, Florida Statutes, was unconstitutional. Resp. Ex. M at 13-17. The circuit court denied the petition for writ of habeas corpus on November 16, 2011. Id. at 18-20. The First DCA per curiam affirmed the denial on August 22, 2012, and issued the Mandate on September 19, 2012. Id. at 31.

On September 11, 2012, Walker filed a motion to correct an illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a) (Rule 3.800(a) Motion), in which he argued the State failed to present the necessary predicate offenses to qualify Walker as a HFO. Resp. Ex. N at 1-5. On July 17, 2013, the circuit court denied the Rule 3.800(a) Motion. Id. at 7-9. The First DCA per curiam affirmed the denial of the Rule 3.800(a) Motion on January 31, 2014, and issued the Mandate on February 26, 2014. Resp. Ex. Q.

Walker filed a petition for writ of habeas corpus with the First DCA on January 22, 2013, in which he argued his appellate counsel was ineffective. Resp. Ex. R. On February

6, 2013, the First DCA per curiam denied the petition. Id. Walker moved for rehearing, which the First DCA denied on April 24, 2013. Id.

On January 24, 2013, Walker filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 Motion), in which he asserted that counsel was ineffective for: (1) misadvising Walker about the maximum sentence he faced; (2) failing to adequately argue a motion for judgment of acquittal; (3) failing to object to the State's improper amendment to the Information; (4) failing to request a hearing on the State's alleged discovery violations; (5) failing to impeach law enforcement officers; (6) failing to object to the State's misstatement of Walker's trial testimony; (7) failing to object to the admission of a satellite photograph; (8) failing to object to improper closing arguments; (9) failing to request the circuit court to read an alibi instruction; (10) failing to object to an erroneous jury instruction; (11) failing to call two witnesses; and (12) failing to object to improper closing arguments. Resp. Ex. S. Following a limited evidentiary hearing, the circuit court denied the Rule 3.850 Motion. Resp. Ex. V at 168-83. On November 5, 2015, the First DCA per curiam affirmed the denial of the Rule 3.850 Motion without a written opinion and issued the Mandate on December 4, 2015. Resp. Ex. NN.

### III. One-Year Limitations Period

The Petition was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d

1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Walker's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court recently stated:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct.

1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[4] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster,

---

[4] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1)'s "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state
> prisoner must exhaust available state remedies, 28 U.S.C. §

2254(b)(1), thereby giving the State the """opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[5] <u>supra</u>, at 747–748, 111 S. Ct. 2546; <u>Sykes</u>,[6] <u>supra</u>, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a

---

[5] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).
[6] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

> defaulted claim by showing cause for the default and
> prejudice from a violation of federal law. See Coleman, 501
> U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor
> external to the defense that prevented [him] from raising the
> claim and which cannot be fairly attributable to his own
> conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir.
> 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[7]
> Under the prejudice prong, [a petitioner] must show that "the
> errors at trial actually and substantially disadvantaged his
> defense so that he was denied fundamental fairness." Id. at
> 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there
> remains yet another avenue for him to receive consideration
> on the merits of his procedurally defaulted claim. "[I]n an
> extraordinary case, where a constitutional violation has
> probably resulted in the conviction of one who is actually
> innocent, a federal habeas court may grant the writ even in
> the absence of a showing of cause for the procedural default."
> Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception
> is exceedingly narrow in scope," however, and requires proof

---

[7] Murray v. Carrier, 477 U.S. 478 (1986).

> of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

### C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u>, at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u>, at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

> A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>, at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u>, at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u>, at 687, 104 S. Ct. 2052.

<u>Richter</u>, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward</u>, 592 F.3d at 1163. Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court

decision denying the claim. <u>Richter</u>, - U.S. at -, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

Walker alleges that his trial counsel was ineffective because he failed to advise Walker that he could be sentenced as a HFO and failed to advise him of the maximum sentence he faced as a HFO, which resulted in Walker rejecting a favorable ten-year plea deal. Petition at 10-18. According to Walker, "[a]t the time of the prosecution's offer the Petitioner was advised that he was facing approximately [s]ixty years in state prison as a Habitual Felony Offender for the sale of cocaine within 1000 ft. of a publically [sic] owned recreational facility offense." <u>Id.</u> at 10. But for counsel's misadvice, Walker claims he would have accepted the ten-year plea offer. <u>Id.</u> at 11.

Walker raised a similar claim as ground one of his Rule 3.850 Motion. Resp. Ex. S at 3-6. In denying this claim, the circuit court explained:

> When considering Ground One in light of the record, this Court concludes that Ground One must be denied. This Court first notes that [the] record demonstrates that the State filed its "Notice of State's Intention to Seek Sentencing as a Habitual Felony Offender Pursuant to Florida Statute

775.084" on November 17, 2008-the same day it filed the Information charging the Defendant with the offenses in this case. The Notice was mailed to the Defendant personally, and to his Counsel. Therefore, the record reflects that the Defendant was made aware of his HFO status several months before his alleged last chance to accept the State's ten-year offer, which he asserts was "on either February 18, 2009 or March 18, 2009)." [sic] Even still, this Court will consider Ground One under the Alcorn[8] test.

Ground One alleges that the Defendant would have accepted the State's offer. Therefore, Ground One alleges prong (1) of the Alcorn test. However, the Florida Supreme Court clarified in Alcorn that the prejudice prong of the Strickland standard is not presumed when a defendant alleges he would have accepted the State's offer but for Counsel's misadvice. Id. at 431-32 ("courts are entitled *432 [sic] to accept the defendant's undisputed, yet self-serving, allegation that he would have taken the plea offer but for being misadvised on the proper statutory maximum as a basis for finding prejudice, but courts are not precluded from rejecting such a statement either."). Therefore, this Court can reject the Defendant's statement after considering the "totality of the evidence." Id. at 429. Here, the record gives this Court reasons to reject Defendant's statement in Ground One that he would have accepted the plea if provided correct advice by Counsel. Therefore, this Court finds that Ground One does not meet prong (1) of the Alcorn test for five reasons.

First, the Defendant is a twenty-two time convicted felon, and has admitted that he has been convicted of crimes of dishonesty five times. Second, the Defendant stands to benefit greatly from a favorable ruling on the instant motion. Third, before trial, the State informed this Court that a ten-year plea offer was tendered to the Defendant. At that time, Counsel explained to this Court why the Defendant had rejected the plea agreement: "Mr. Walker expressed to me that he wants to contest the charges and that's why the previous offer wasn't accepted." Fourth, the Defendant maintained his innocence throughout the course of the proceedings: he even testified at trial that he was innocent and maintained the "position that I was not that person" at sentencing. Fifth, the Defendant explained to this Court at the time of sentencing that he had been "treated unfairly

---

[8] Alcorn v. State, 121 So. 3d 419, 422 (Fla. 2013).

compared to others in these circumstances" by the State, and that he felt that,

> for instance, the plea offer was so much different from others . . . and this was an offer that was made to me and it was like take it now or we're not giving this to you. And I'm look [sic] at it like, we're talking about ten years of my life away. You know, I have a son who's seven, I have a daughter who's seven months that I just met for the first time during my trial, you know. And I would like to have a chance to be part of their life.

Therefore, the record clearly reflects that the Defendant rejected the plea because he believed he was innocent, and because he felt that the plea was harsh compared to those offered to defendants in similar circumstances. For these reasons, this Court finds that Ground One alleges prong (1) of the Alcorn test, but that the allegation is refuted by the record. Accordingly, this Court rejects the Defendant's claim that he would have accepted the plea if advised correctly.

Ground One failed because prong (1) of the Alcorn test is not met, as all four prongs are required. This Court has considered the remainder of the factors, and finds that Ground One also does not address, and cannot demonstrate, prong (2) of the Alcorn test. The record reflects that the Defendant stated to this Court at sentencing that the prosecutor did not leave the plea agreement on the table for very long. Ground One does not address prong (3), and this Court finds no indication in the record as to whether this Court would or would not have rejected the ten-year plea agreement. Ground One alleges prong (4) of the Alcorn test by arguing that, under the State's offer's terms, the ten-year sentence would have been less severe than the twenty-five year, followed by five years of probation, sentence that was imposed. The record confirms this. However, as every prong of the Alcorn test is required to demonstrate prejudice, and all prongs are not met, this Court concludes that Ground One does not meet the Alcorn test. As Ground One does not meet the Alcorn test, the Defendant cannot demonstrate the prejudice prong of the Strickland standard. Accordingly, Ground One must be denied. Hurst v. State, 18 So. 3d 975 (Fla. 2009) ("[W]hen a defendant fails to make a showing as to one prong, it is not necessary to delve into whether he has made a showing as to

> the other prong." <u>Preston v. State</u>, 970 So. 2d 789, 803 (Fla.
> 2007) (<u>quoting</u> <u>Whitfield v. State</u>, 923 So. 2d 375, 384 (Fla.
> 2005)). [sic]

Resp. Ex. V at 169-71 (record citations omitted). The First DCA per curiam affirmed the denial without a written opinion. Resp. Ex. NN.

To the extent that the First DCA decided the claim on the merits,[9] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Walker is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of the claim is not entitled to deference, Walker's claim in Ground One is without merit. Under Florida law, in order to state a facially sufficient claim that counsel's alleged deficient performance led a defendant to reject a plea offer, the defendant must allege the following:

> (1) he or she would have accepted the offer had counsel advised the defendant correctly, (2) the prosecutor would not have withdrawn the offer, (3) the court would have accepted the offer, and (4) the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

<u>Alcorn</u>, 121 So.3d at 422.

---

[9] Throughout this order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." <u>Wilson</u>, 138 S. Ct. at 1194.

The record reflects that on November 17, 2008, the State mailed or delivered a copy of its notice of intent to seek a HFO sentence to both Walker, at his home address, and to his attorney. Resp. Ex. A at 18. Accordingly, the record demonstrates that Walker was served notice of the State's intention to seek a HFO sentence prior to the State making the ten-year plea offer, a fact Walker appears to admit in his Petition. See Petition at 10 ("At the time of the prosecution's offer the Petitioner was advised that he was facing approximately [s]ixty years in state prison as a Habitual Felony Offender . . .") (emphasis added). Therefore, his claim regarding counsel's alleged failure to advise him about the possibility of being adjudicated a HFO is refuted by the record.

Concerning Walker's claim that counsel misadvised him about the maximum sentence he faced, the Court finds that Walker cannot demonstrate prejudice because he has not proven that he would have accepted the plea. Prior to jury selection, the State put on the record that Walker rejected a ten-year plea deal. Resp. Ex. I at 4. Walker's counsel then stated the following, "I believe Mr. Walker expressed to me that he wants to contest the charges and that's why the previous offer wasn't accepted." Id. At the sentencing hearing, Walker made the following comments regarding the plea offer:

> I kind of feel like I have been treated unfairly compared to others in these circumstances and facing some of the charges as to me that I just feel like, for instance, the plea offer was so much different from others being that this is my first time. And this was an offer that was made to me and it was like take it now or we're not giving this to you. And I'm look [sic] at it like, we're talking about ten years of my life away. You know, I have a son who's seven, I have a daughter who's seven months that I just met for the first time during my trial, you know.

Resp. Ex. JJ at 136-37. Walker's comments indicate he did not think ten-years was a reasonable sentence and that is why he did not accept the plea. Notably, at the

sentencing hearing, Walker also stated, "I mean, I never faced a life sentence. I never had a charge this serious." Id. at 138. At that same hearing, defense counsel agreed with the circuit court and State's analysis that the maximum sentence Walker faced as to count one was a life sentence and a fifteen-year sentence as to count two. Id. at 129-30. Although these exchanges occurred after trial and do not necessarily refute Walker's allegations here, they do however demonstrate that both Walker and counsel at that point in time did not think sixty years was the maximum sentence. Even knowing that he faced a life sentence at the sentencing hearing, Walker still complained that the ten-year plea offer was excessive given his criminal history and the facts of the case. Accordingly, based on this record, the Court finds the circuit court did not make an unreasonable determination in finding that Walker would not have accepted the plea offer even if counsel had not allegedly misadvised him. For the above stated reasons, relief on the claim in Ground One is due to be denied.

## B. Ground Two

In Ground Two, Walker avers that his trial counsel was ineffective because he failed to adequately argue a motion for judgment of acquittal. Petition at 18-24. Walker contends that the State failed to prove that the First Federal Sportsplex was a publicly owned recreational facility. Id. According to Walker, the State only proved that the land was publicly owned, not that the building on top of it was a publicly owned recreational facility. Id. Additionally, he asserts that the State failed to prove that the First Federal Sportsplex existed at the time the offenses were alleged to have been committed. Id. at 23.

Walker alleged a similar ground in his Rule 3.850 Motion. Resp. Ex. S at 6-8. The circuit court denied the claim, stating:

> The record reflects that, during the State's case-in-chief, the Director of the County Parks and Recreation testified about the First Federal Sportsplex. The following line of questioning took place:
>
>> [THE PROSECUTOR]: Referring to State's exhibit No. 1, this is what has been previously testified as Silas Drive. Is there a recreation facility located on Silas Drive?
>>
>> [THE WITNESS]: Yes, to the south end, the First Federal sports complex, which is a community park.
>>
>> [THE PROSECUTOR]: Who owns this?
>>
>> [THE WITNESS]: The dirt itself is owned by Suwannee County and joint partnership with the City of Live Oak and Suwannee County. . . .
>>
>> [THE PROSECUTOR]: Is the border of the land owned by the complex, does it begin on the side of the road?
>>
>> [THE WITNESS]: Correct.
>>
>> [THE PROSECUTOR]: So, anything from the asphalt back is the property of the Suwannee County parks and recreation?
>>
>> [THE WITNESS]: Actually just south of the right-of-way itself, not the asphalt, but the right-of-way.
>>
>> [THE PROSECUTOR]: So a car length and then property of the county used for recreation purposes?
>>
>> [THE WITNESS]: Correct.
>
> This Court finds that the State therefore presented evidence that the facility was publically [sic] owned. Contrary to the

Defendant's assertion, this evidence did not have to prove the offense "beyond a reasonable doubt" to withstand a motion for judgment of acquittal. The consideration of a motion for judgment of acquittal is not one of the weight of the evidence, but, rather, "is whether the evidence is legally adequate to support the charge." Jones v. State, 790 So. 2d 1194, 1197 (Fla. 1st DCA 2001). Further, a motion for judgment of acquittal should not be granted "unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law." Id.

This Court concludes that the State witness' testimony that the "dirt" underneath the facility was owned by the Suwannee County and the City of Live Oak, in addition to the testimony that, behind "the right-of-way" is property of the Parks and Recreation Department, could have been viewed by the jury as supporting the charge of Sale of Cocaine Within 1,000 Feet of a Recreational Facility. So, a motion for judgment of acquittal would have been denied for that reason. Therefore, Counsel could not have been ineffective for failing to make such a motion, as Counsel cannot be ineffective for failing to raise a meritless claim. Dailey v. State, 965 So. 2d 38 (Fla. 2007). As Counsel could not have been ineffective, the [sic] Ground Three fails to meet the deficient performance prong of the Strickland standard, and must be denied. Hurst, 18 So. 3d 975.

. . . .

Resp. Ex. V at 171-73 (record citations omitted). The First DCA per curiam affirmed the denial without a written opinion. Resp. Ex. NN.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of

the evidence presented in the state court proceedings. Thus, Walker is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of the claim is not entitled to deference, the claim in Ground Two is meritless. In reviewing a motion for judgment of acquittal, trial courts must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979); <u>see also</u> <u>Gudinas v. State</u>, 693 So. 2d 953, 962 (Fla. 1997) (quoting <u>Taylor v. State</u>, 583 So. 2d 323, 328 (Fla. 1991) (holding a motion for judgment of acquittal should not be granted unless "there is no view of the evidence which the jury might take favorable to the opposite party that can be sustained under the law."). Section 893.12(1)(c), Florida Statutes, states in pertinent part that "a person may not sell, manufacture, or deliver, or possess with intent to sell, manufacture, or deliver, a controlled substance . . . at any time in, on, or within 1,000 feet of real property comprising a state, county, or municipal park, a community center, or a publicly owned recreational facility." The Statute goes on to define the phrase "community center" as "a facility operated by a nonprofit community-based organization for the provision of recreational, social, or educational services to the public." <u>Id.</u>

The record reflects that Greg Scott, Suwannee county parks and recreation director, testified at the trial. Resp. Ex. D at 117-18. The following exchange occurred:

> Q.    Referring to State's Exhibit No. 1, this is what has been previously testified as Silas Drive. Is there a recreation facility located on Silas Drive?
>
> A.    Yes, to the south end, the First Federal sports complex, which is a community park.

Q.      Who owns this?

A.      The dirt itself is owned by Suwannee County and joint partnership with the City of Live Oak and Suwannee County.

Q.      What kind of activities take place?

A.      We have many youth programs like baseball, softball, flag football, soccer and also playgrounds and people walk for fitness and picnic and large playground.

Q.      Is the border of the land owned by the complex, does it begin on the side of the road?

A.      Correct.

Q.      So anything from the asphalt back is the property of the Suwannee County parks and recreation?

A.      Actually just south of the right-of-way itself, not the asphalt, but the right-of-way.

Q.      So a car length and then property of the county used for recreation purposes?

A.      Correct.

Id. When this testimony is viewed in a light most favorable to the State, a rational trier of fact could find that the First Federal Sports Complex constituted a recreational facility for purposes of section 893.12(1)(c). According to Scott, the land was publicly owned by the county and city and used for recreational purposes. Even if counsel had argued this issue in the motion for judgment of acquittal, there is no reasonable probability the circuit court would have granted it. Therefore, counsel cannot be deemed deficient for failing to raise a meritless argument. See Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1142 (11th Cir. 2005) (holding counsel cannot be ineffective for failing to raise a meritless argument); Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994) (noting that "it is axiomatic

that the failure to raise nonmeritorious issues does not constitute ineffective assistance."). Walker has failed to demonstrate deficient performance or prejudice; therefore, relief on his claim in Ground Two is due to be denied.

## C. Ground Three

Lastly, Walker contends that his counsel was ineffective because he failed to request an alibi jury instruction even though counsel presented evidence and argument in support of an alibi defense. Petition at 25-32. According to Walker, counsel's failure to request this instruction negated his only defense. Id. at 25. Had the instruction been requested and read, Walker maintains that "the jury may have returned an acquittal." Id.

Walker alleged a similar claim as ground nine of his Rule 3.850 Motion. Resp. Ex. S at 27-28. In denying relief, the circuit court stated the following:

> As this claim is legally cognizable, this Court reviewed the record. The record confirms that Counsel did not request, and this Court therefore did not give, an alibi instruction. Therefore, the record does not refute this claim. As the record does not refute this claim, this Court must look to Florida law to determine whether the Defendant is entitled to relief.
>
> The First District Court of Appeal has stated that
>
> > Defense counsel's failure to request a jury instruction "has been deemed to be an 'unreasonable omission which severely prejudiced his client's case' where the error complained of 'negated the only defense put forth by trial counsel.'" Platt v. State, 697 So. 2d 989, 991 (Fla. 4th DCA 1997) (citation omitted) . . .
>
> [Mathis v. State, 973 So. 2d 1153, 1157 (Fla. 1st DCA 2006)].
>
> With this case in mind, this Court must determine whether Counsel's failure to request the jury instruction on the primary defense theory was unreasonable under the circumstances that existed at the time of the trial, without

using hindsight. It is possible that Counsel had a reasonable strategic tactic for not requesting the alibi jury instruction. However, a postconviction finding that counsel made such a strategic decision should be made only after an evidentiary hearing. Id. at 1158 ("once a defendant makes the required showing under Strickland, an objective basis for trial counsel's action must be found within the record to justify counsel's performance and thereby rebut the defendant's claim on the ground that counsel's conduct was strategic . . . If the record itself does not provide such justification, a court has no choice but to require the State, as well as the attorney whose performance is in question, to answer the defendant's allegations."); Childers v. State, 782 So. 2d 513, 519 (Fla. 1st DCA 2001) (noting that an action taken may have been counsel's strategy, but "such a finding generally should be made only after an evidentiary hearing." See Porter v. State, 626 So. 2d 268 (Fla. 2d DCA 1993)."). Accordingly, this Court previously entered an order concluding that, unless the State showed good cause as to why Ground Nine should not proceed to an evidentiary hearing, a hearing on this claim would be set. The State did not file a response. Therefore, this ground proceeded to an evidentiary hearing.

At the evidentiary hearing, the State called Counsel as a witness. The prosecutor asked Counsel whether he had gone over alibi jury instructions during trial preparation. Counsel testified as follows:

> I believe I had a trial strategy that I felt that calling – using an alibi witness instruction may confuse the jury and have them focus more on the defense being based on alibi witness testimony. The defense strategy was for the jury to focus on the basis that the state had the burden of proving the identity of the individual who allegedly committed the crimes charged on the day and at the place in question.

Therefore, the record now reflects that Counsel concluded that an alibi jury instruction could have hurt the case, rather than help the case. The record also now reflects that Counsel utilized lack of identity as another defense, in addition to the alibi defense. This Court therefore concludes that Counsel made a strategic decision in not requesting the alibi jury instruction in an effort to prevent confusing the jury. It is well-settled that strategic decisions do not constitute ineffective

> assistance of counsel if alternative courses have been considered and rejected, and if counsel's decision was reasonable according to the norms of professional conduct. <u>Occhicone v. State</u>, 768 So. 2d 1037, 1048 (Fla. 2000); <u>see also</u> <u>State v. Bolender</u>, 503 So. 2d 1247, 1250 (Fla. 1987); <u>Henry v. State</u>, 948 So. 2d 609, 619 (Fla. 2006) ("We have repeatedly rejected claims of ineffective assistance of counsel when the allegedly improper conduct was the result of a deliberate trial strategy."). Counsel's testimony demonstrates that he considered an alternative course – requesting additional jury instructions. Counsel rejected the notion of requesting an alibi jury instruction as a defense strategy, in order to avoid confusing the jury, and ultimately requested jury instructions that focused on the weakness of the State's case and lack of identification of the Defendant rather than the strength of the defense's case. This Court finds that, according to the norms of professional conduct, these decisions were reasonable decision [sic] in light of the circumstances surrounding this case at the time. Accordingly, Ground Nine does not entitle the Defendant to relief, and it will be denied.

Resp. Ex. V at 179-80 (record citations omitted). The First DCA per curiam affirmed the circuit court's denial of this claim without a written opinion. Resp. Ex. NN.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Walker is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, this claim is without merit. The Court notes that "[t]he Supreme

Court has mandated a highly deferential review of counsel's conduct, especially where strategy is involved," and "[i]ntensive scrutiny and second guessing of attorney performance are not permitted." Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994) (citing Strickland, 466 U.S. at 689-90)). When reviewing a claim of deficient performance with AEDPA deference, the Eleventh Circuit has explained that:

> Inquiries into strategic or tactical decisions challenged as ineffective assistance of counsel involve both a factual and a legal component. The question of whether an attorney's actions were actually the product of a tactical or strategic decision is an issue of fact, and a state court's decision concerning that issue is presumptively correct. By contrast, the question of whether the strategic or tactical decision is reasonable enough to fall within the wide range of professional competence is an issue of law not one of fact, so we decide it de novo.

Provenzano v. Singletary, 148 F.3d 1327, 1330 (11th Cir. 1998).

The record reflects that the circuit court held an evidentiary hearing on this claim, at which Walker's counsel, Jason Von Berman, testified. Resp. Ex. Z at 39-44. Von Berman testified that he reviewed jury instructions with Walker prior to trial. Id. at 41. When asked if he reviewed an alibi jury instruction with Walker, Von Berman stated the following:

> A.      I believe I had a trial strategy that I felt that calling – using an alibi witness instruction may confuse the jury and have them focus more on the defense being based on alibi witness testimony. The defense strategy was for the jury to focus on the basis that the state had the burden of proving the identity of the individual who allegedly committed the crimes charged on the day and at the place in question.
>
> Q.      Okay.
>
> A.      So the defense strategy was for [sic] basically I wanted the jury to focus on whether the state had met its burden of basically proving every element of the crime which included

the burden of proving beyond a reasonable doubt the identity of the defendant as the person who committed the crime. I felt that there was some weaknesses there and tried to capitalize [on] that. We called witnesses as mitigating factors as rebuttal and to my recollection the jury deliberated for about three hours. So –

Q.  Okay. So not calling all of his witnesses that he gave you and not asking for the jury instruction you are saying was mostly your trial strategy?

A.  Correct.

Id. at 41-42.

The trial record reflects that a confidential informant provided law enforcement officers with the nickname and phone number of a man who sold crack cocaine. Resp. Ex. D at 52. Officers then conducted a controlled-call and set up a buy-bust with the dealer. Id. at 52-53, 57. Officer Mary Ramirez drove the informant to the drop-off location and waited as the informant walked to meet the dealer. Id. at 57-60. Ramirez had clear views of the dealer and the informant for the majority of the time, but she was not able to see the actual transaction because the informant's body blocked the view momentarily. Id. at 58-62, 66. However, the informant returned with crack cocaine. Id. at 63-64. Thirty minutes after the transaction, Ramirez returned to the scene to try and find the dealer. Id. at 68-69. She observed the same individual in the street again. Id. Notably, Ramirez made an in-court identification of Walker as the man who sold the informant crack cocaine. Id. at 70-71, 73, 75. Likewise, the informant had an unobstructed view of the dealer's face, picked Walker out of a photographic line-up, and made an in-court identification of Walker as the dealer. Resp. Exs. D at 92; E at 141-42. The informant's sister who provided police with Walker's nickname and phone number for the buy-bust also made an in-court identification of Walker as the dealer. Resp. Ex. E at 155-56. Officer Frank Gorski testified

that he had an unobstructed view of the transaction and the dealer's face and made an in-court identification of Walker as the dealer. Id. at 186-90. Investigator Hubert Smith also participated in the buy-bust and made an in-court identification of Walker as the dealer. Id. at 206-07.

Walker presented the testimony of Karen Williams, a guidance counselor at the vocational school Walker attended, who stated that attendance records reflected that Walker was present at school the day of the incident. Id. at 242-43. Notably, she testified that Walker's school would have ended that day at 3:00 p.m., before the buy-bust occurred. Id. at 243. On cross-examination, Williams testified that she had no idea what time Walker would have left campus that day. Id. at 247. The defense also called Eva Howard, Walker's girlfriend. Id. at 255-56. However, she testified she was not certain where Walker was on the day of the incident. Id. at 259. Walker also testified on his own behalf that he was not the dealer and that he was at school, then at a friend's house, and then at a football game on the day of the incident. Resp. Ex. F at 280-81. Notably, Walker was a seven-time convicted felon at the time of trial and had been convicted of a misdemeanor involving dishonesty or false statements five times. Id. at 280.

Other than Walker's own testimony, there was nothing to support an alibi defense as neither Williams nor Howard could say where Walker was at the time the incident occurred. Accordingly, counsel's strategic decision not to focus on an alibi defense is not unreasonable given the facts of this case. Counsel's concerns about confusing the jury with the burden of proof is reasonable in light of the scant evidence provided for an alibi defense. Moreover, the Court finds that Walker cannot demonstrate prejudice because even if the alibi instruction were read, there is no reasonable probability the outcome of

the trial would have been different. The alibi evidence was limited to Walker's own testimony and his credibility was severely diminished given his numerous prior convictions. Additionally, five eye-witnesses, including three law enforcement officers, identified Walker as the dealer. In light of this evidence, the Court finds Walker cannot demonstrate prejudice. As Walker has failed to show deficient performance or prejudice, relief on his claim in Ground Three is due to be denied.

## VII. Certificate of Appealability

## Pursuant to 28 U.S.C. § 2253(c)(1)

If Walker seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Walker "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition

states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Walker appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 17th day of April, 2019.

MARCIA MORALES HOWARD
United States District Judge

Jax-8

C:      Jermaine Walker, #I01816
        Thomas Duffy, Esq.